IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JERRY G. MARKADONATOS, and all others similarly situated, ) ) ) Plaintiffs, ) ) v. ) VILLAGE OF WOODBRIDGE, ) ) Defendant. ) | No. 11-C-7006 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Jerry G. Markadonatos alleges in his complaint that the Village of Woodbridge violated 42 U.S.C. § 1983 by failing to provide due process before requiring him to pay a $30 booking fee following his arrest for shoplifting. (Dkt. No. 1 ("Compl.").) Pending before the court is the Village's "Motion to Dismiss" under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 17.) Based upon the reasons explained below, the Village's Motion is granted.

BACKGROUND

According to the complaint, Markadonatos was arrested on January 8, 2011 and charged with retail theft. (Compl. ¶ 14.) He was taken to the Woodbridge jail, where he was booked and requried to pay a $30 booking fee under the Woodbridge, Illinois, Municipal Code 5-1-12(A).[1] (Compl.

---

[1] The Woodbridge, Illinois, Municipal Code 5-1-12 provides:

The fees for the following activities and purposes shall be as follows:

    A.    Booking Fee: When posting bail or bond on any legal process,
           civil or criminal, or any custodial arrest including warrant    $30.00

¶¶ 15-16.) Eventually Markadonatos received supervision for his retail theft charge. (*Id.* ¶ 17.) Under Illinois law, if he completes the supervision successfully, the charge will be dismissed "without adjudication of guilt." 730 Ill. Comp. Stat. 5/5-6-3.1(f). When Markadonatos was released from jail, he did not receive a refund of the booking fee. (Compl. ¶¶ 18-20.) The Village's booking fee policy includes no provision for a refund regardless of the disposition of the arrestee's case. (Compl. ¶ 13.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. College Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor. *Id.*

## ANALYSIS

To state a claim for relief under § 1983, Markadonatos must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Here, Markadonatos's complaint alleges that the Village, a state actor, violated his Fourteenth Amendment right to procedural due process by imposing the $30 booking fee without applying appropriate procedures. Markadonatos contends that merely alleging that the Village, a state actor, deprived him of his right to procedural due process is sufficient to survive a motion to dismiss, and that the court need not evaluate whether he has alleged a valid procedural due process claim under the familiar *Mathews v. Eldridge*[2] test. That contention is incorrect, because "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Instead, Markadonatos must show that his claims are plausible, which includes a showing that the alleged facts, if true, make out a due process violation under *Eldridge*. *See Payton v. Cnty. of Carroll*, 473 F.3d 845, 851 (7th Cir. 2007) (noting that on an appeal from the granting of a motion to dismiss, "it would have been prudent for the plaintiffs to have said more about *Mathews v. Eldridge*"). The court will accordingly evaluate whether Markadonatos has alleged a valid violation of his right to procedural due process.

When examining procedural due process claims, the court must first ask "whether there exists a liberty or property interest which has been interfered with by the state," and second determine "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Here, the parties do not dispute that Markadonatos has a property interest in his money. *See Bd. of Regents of State Colleges v. Roth*,

---

[2] 424 U.S. 319, 335 (1976).

408 U.S. 564, 571 (1972) ("[P]roperty interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money.").

The only question is therefore whether the procedures leading to the deprivation of that interest were sufficient. To make that inquiry, the court must consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Eldridge*, 424 U.S. at 335.

I.  Private Interest

Markadonatos's private interest here is purely monetary. The $30 fee at stake is a fairly small amount compared to the interests that typically require a predeprivation hearing. As the Sixth Circuit noted when evaluating a private interest of $20 and $110.27,

> [t]he private stakes at issue . . . do not begin to approach the kinds of government conduct that have required a predeprivation hearing, such as a limitation on the "historic" "right to maintain control over [one's] home," or the termination of government benefits, which for many people are "the very means by which to live."

*Sickles v. Campbell Cnty.*, 501 F.3d 726, 730 (6th Cir. 2007) (alteration in original) (citations omitted).

Markadonatos attempts to avoid that conclusion by citing an unreported opinion from the Eastern District of Washington in which the district court held Spokane County's imposition of a booking fee to be procedurally inadequate. *Huss v. Spokane Cnty.*, No. 05-180 (E.D. Wash. Oct. 12, 2007). The *Huss* opinion concluded that the private interest in even a small sum is worthy of "considerable weight" because small amounts of money may hold great significance for an

-4-

individual in poor economic circumstances. The court agrees that a small sum of $30 may be subjectively significant to some individuals, but the significance of any amount of money to a particular individual does not necessarily determine that amount's significance in the constitutional analysis. Indeed, the Supreme Court in *Eldridge* discounted the value of a worker's income stream from disability payments because "the disabled worker's need is likely to be less than that of a welfare recipient" who has no other income besides welfare payments. *Eldridge*, 424 U.S. at 906. The Supreme Court thus declined to place great weight on a monetary interest short of an income stream constituting the sole means of an individual's subsistence. An arrestee's one-time interest in a $30 booking fee does not rise to nearly that level. The court therefore concludes that Markadonatos's interest in the $30 he paid is entitled to only minimal weight.

II. Risk of Erroneous Deprivation and Value of Additional or Substitute Procedures

Markadonatos contends that the risk of erroneous deprivation is the risk that an arrestee who is later found innocent or released without facing criminal charges will nonetheless have to pay the $30 fee. Under that theory, he contends that erroneous deprivation is certain in at least some cases, as not all arrestees are convicted of crimes.

Markadonatos has incorrectly identified the risk of erroneous deprivation, however. Pursuant to its policy, the Village charges the $30 fee whenever there is "any custodial arrest" and makes no provisions for a refund. Woodbridge, Ill., Mun. Code 5-1-12. Consequently, all arrestees are liable to pay the fee regardless of the disposition of their case.[3] The risk of erroneous deprivation

---

[3] Markadonatos does not raise the issue of whether the Village's policy of charging a fee to all arrestees, regardless of the subsequent disposition of their case, is itself substantively unconstitutional. The court therefore addresses only the adequacy of the Village's procedures before imposing the fee.

is thus the risk that the $30 fee will be charged to someone who has not been arrested.[4]

That risk is minimal, as the administration of the fee requires Village personnel to make only a simple determination, involving no discretion, that an individual was arrested. Village personnel make that determination at the time of booking an individual into jail after an arrest, making it nearly impossible for an error to occur. Moreover, additional procedures would not provide any additional safeguards or decrease the already negligible risk of erroneous deprivation.

III.     Government Interest

The Village identifies its interest as defraying the administrative costs it incurs when processing arrestees. Markadonatos responds that the Village's actual interest is in defraying that cost by collecting a fee prior to a determination of guilt, rather than after a hearing. Again, Markadonatos is incorrect, as the determination of guilt is irrelevant to the imposition of the $30 booking fee that applies to all arrestees.

The Village's interest in recouping its costs is legitimate. Just as the private interest in a small amount of money is minimal, however, the Village's interest in the $30 fee that it collects from arrestees is relatively minor. Consequently, the court determines that the government's interest in imposing a $30 booking fee on arrestees is entitled to no more than minimal weight.

IV.     Balancing of the Interests

In light of the small sum at issue in this case, the court finds that both the private interest and

---

[4] That conclusion distinguishes the Village's policy from the policy struck down in *Huss*. No. 05-180 (E.D. Wash. Oct. 12, 2007). There, the court determined that additional procedures were necessary to protect against the risk of charging a booking fee to an individual ultimately determined to be innocent. *Id.* The court relied on the provision of Spokane's policy providing for a refund to arrestees not convicted of a crime, and concluded that those individuals were erroneously deprived of their property between their arrest and the determination of innocence. *Id.*

the government interest are modest at best, and nearly equal in constitutional stature. The dispositive factor is thus the nearly nonexistent risk of erroneous deprivation. Because there is almost no risk that the Village will charge the $30 booking fee to an individual who has not been arrested, and because no additional procedures would significantly decrease that risk, the Village's procedures for charging the $30 fee pass constitutional muster. Markadonatos has thus failed to state a § 1983 claim that the Village violated his due process rights.

## CONCLUSION

For the reasons stated above, the Village's Motion to Dismiss (Dkt. No. 17) is granted.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN

Chief Judge, United States District Court

Date: January 6, 2012